UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JULIO CARABALLEA, 77-A-4889

                              Plaintiff,                05-CV-0326(Sr)

v.

GEORGE PATAKI, ROBERT DENNISON,
and GLENN GOORD

                              Defendants.

---

**DECISION AND ORDER**

Pursuant to 28 U.S.C. § 636(c), the parties have consented to have the undersigned conduct any and all further proceedings in this case, including entry of final judgment. Dkt. #10.

Currently before the Court is defendants' motion to dismiss plaintiff's complaint. Dkt. #8. For the following reasons, defendants' motion is granted.

**BACKGROUND**

Plaintiff, an inmate at the Arthur Kill Correctional Facility, commenced this action, *pro se*, pursuant to 42 U.S.C. § 1983, seeking declaratory and injunctive relief regarding the manner in which parole determinations are made, as well as compensatory and punitive damages for denial of parole in violation of his constitutional

right to be free from cruel and unusual punishment and his rights to due process and equal protection under the law. Dkt. #1.

Plaintiff was convicted of murder, second degree and sentenced to a term of imprisonment of 25 years to life on December 14, 1977. Dkt. #1, ¶ 7. Plaintiff was denied parole following appearances before the New York State Board of Parole ("Board"), in 2001, 2003 and 2005. Dkt. #1, ¶ 11.

Plaintiff alleges that the Board ignored his participation in prison programs and the strength of his plan upon release and relied solely upon the nature and circumstances of his offense in reaching its decision. Dkt. #1, ¶¶ 8-12. Plaintiff also complains that the Board afforded preferential treatment to a white woman, Kathy Boudine,[1] an admitted member of a known terrorist organization, The Weather Underground, and cites the Board's decision to afford Ms. Boudin parole upon her first appearance as evidence of a pattern and practice of withholding parole to members of the underclass while granting parole "to those considered privileged, white and/or affluent." Dkt. #1, ¶ ¶ 19-20. Plaintiff also cites the parole of John Kim,[2] "the son [of] a major contributor to the defendant Pataki's gubernatorial campaign" as an example of

---

[1] According to the New York State Department of Correctional Services, Kathy Boudin was convicted of Murder, 2nd degree and Robbery, 1st degree, and sentenced to an indeterminate term of incarceration of 20 years to life. She was released on September 17, 2003 after serving 22 years of her sentence. *See* http://nysdocslookup.docs.state.ny.us. Ms. Boudin self-reported her race/ethnicity as "white."

[2] According to the New York State Department of Correctional Services, John Kim was convicted of Robbery, 1st degree, and sentenced to an indeterminate term of incarceration of 4 to 12 years. *See* http://nysdocslookup.docs.state.ny.us. Mr. Kim self-reported his race/ethnicity as "other." *Id.*

defendants' "pattern and practices of withholding parole to members of the underclass, of which[] plaintiff is a member, while granting parole to those considered privileged, white and/or affluent." Dkt. #1, ¶ 20.

Subsequent to the filing of this action, plaintiff was paroled to the custody of the U.S. Immigration Services. *See* http://nysdocslookup.docs.state.ny.us. Plaintiff has not provided the Court with an updated address as required by Rule 5.2(d) of the Local Rules of Civil Procedure.[3]

**DISCUSSION AND ANALYSIS**

Dismissal Standard

When ruling on a motion to dismiss, the court accepts the material facts alleged in the complaint as true and draws all reasonable inferences in favor of the plaintiff and against the defendants. *See Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998); *Cohen v. Koenig*, 25 F.3d 1168, 1171-72 (2d Cir. 1994); *Atlantic Mutual Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992). However, legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness. *Albany Welfare Rights Organization Day Care Center, Inc.*

---

[3] Rule 5.2(d) of the Local Rules of Civil Procedure provides that

> A party appearing pro se must furnish the Court with a current address at which papers may be served on the litigant. Papers sent to this address will be assumed to have been received by plaintiff.
>
> In addition, the Court must have a current address at all times. Thus, a *pro se* litigant must inform the Court immediately in writing of any change of address. Failure to do so may result in dismissal of the case with prejudice.

*v. Schreck*, 463 F.2d 620 (2d Cir. 1972), *cert. denied,* 410 U.S. 944 (1973). The court is required to read the complaint broadly and with great latitude on a motion to dismiss. *Yoder v. Orthomolecular Nutr. Inst.*, 751 F.2d 555, 558 (2d Cir.1985). The court's function on a motion to dismiss is "not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

The United States Supreme Court recently revisited the standard of review on a motion to dismiss and concluded that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)(internal citations omitted). In setting forth this standard, the Supreme Court disavowed an often quoted statement from its decision in *Conley v. Gibson* that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561, *quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The Supreme Court explained that

> This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals [for the Second Circuit] appears to have read *Conley* in some such

> way when formulating its understanding of the proper pleading standard . . . .

*Id.* The Supreme Court decried that

> On such a focused and literal reading of *Conley's* "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. It seems fair to say that this approach to pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case ...

*Id.* at 561-62 (internal citations omitted). The Supreme Court then limited *Conley* to describing "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Id.* at 563. The Supreme Court reiterated that it did "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on it face." *Id.* at 570; *see Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (May 18, 2009).

Claim for Injunctive & Declaratory Relief

Plaintiff's release on parole renders moot his challenge to the procedures used by the Board in assessing eligibility for parole. *See Cobos v. Unger,* 534 F. Supp.2d 400, 404 (W.D.N.Y. 2008) (challenge to procedure utilized by Board rendered moot by release on parole).

Claim for Monetary Damages

Plaintiff's claim for monetary damages is barred because an award of monetary damages would necessarily imply that the Board improperly denied his release on parole and a claim challenging the denial of parole can only be raised in the context of a petition for writ of *habeas corpus*. *See Wilkinson v. Dotson*, 544 U.S. 74 (2005) (prisoner cannot circumvent rule that challenge to the fact or duration of his physical imprisonment must be brought *via* petition for writ of *habeas corpus* by commencing an action pursuant to 42 U.S.C. § 1983 to obtain monetary damages where the award of damages would necessarily demonstrate the unlawfulness of the proceeding which continued his confinement); *Jude v. New York State*, No. 07 Civ. 5890, 2009 WL 928134, at *8 (S.D.N.Y. Mar. 30, 2009)(claim for money damages is retrospective and would necessarily invalidate plaintiff's confinement)*; Bodie v. Morgenthau*, 342 F. Supp.2d 193, 201 (S.D.N.Y. 2004)("Though [plaintiff] protests that he seeks damages for use of an erroneous procedure and not for an incorrect parole determination, any ruling in his favor would necessarily call into question the determination to deny him parole and, consequently, the duration of his confinement.").

Due Process Claim

"There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal and Corr. Complex*, 442 U.S. 1, 7 (1979). "In order for a state prisoner to have an interest in parole that is protected by the Due Process Clause, he must have a legitimate expectancy of release that is grounded in the state's statutory

scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001). It is settled, however, that the "New York parole scheme is not one that creates in any prisoner a legitimate expectancy of release." *Id.* at 171. As a result, plaintiff's right to due process will be limited to not being denied parole for arbitrary or impermissible reasons, such as reliance upon a protected characteristic or an irrational distinction. *See Farid v. Bouey,* 554 F. Supp.2d 301, 318-19 (N.D.N.Y. 2008); *Boddie v. New York State Div. of Parole*, 288 F. Supp.2d 431, 440 (S.D.N.Y. 2003).

Denial of parole based upon any of the statutory factors set forth in New York's Executive Law is neither arbitrary nor capricious. *See Siao-Pao v. Connelly,* 564 F. Supp.2d 232, 242 (S.D.N.Y. 2008); *Larocco v. New York State Div. of Parole*, 05-CV-1602, 2006 WL 1313341, at *2 (N.D.N.Y. May 12, 2006). In other words, denial of parole may be justified on the basis of statutory factors, including the seriousness of the offense. *See Romer v. Travis*, No. 03 Civ. 1670, 2003 WL 21744079, at *6 (S.D.N.Y. 2003). As plaintiff alleges, and the Parole Board Release Decision Notices attached to plaintiff's complaint supports, the Board's determination to deny parole was based upon consideration of the serious nature and circumstances of plaintiff's offense. As this is a legitimate basis for denial of parole, plaintiff has failed to state a cause of action for denial of due process in the Board's determination. *See Anthony v. New York State Div. of Parole*, 06-Civ-180, 2006 WL 3859215, at *9 (E.D.N.Y. Jan. 4, 2006) ("Courts in this circuit have routinely rejected [arguments] that parole denials were arbitrary because they allowed the nature of the underlying criminal offenses to outweigh petitioners' positive institutional records.").

Cruel and Unusual Punishment Claim

It is well established that a sentence of imprisonment that is within the limits of a valid state statute is not cruel and unusual punishment in the constitutional sense and that the Eighth Amendment to the United States Constitution "condemns only punishment that shocks the collective conscience of society." *Campbell v. Poole*, 555 F. Supp. 2d 345, 377 (W.D.N.Y. 2008), *quoting United States v. Gonzalez*, 922 F.2d 1044, 1053 (2d Cir.), *cert. denied*, 502 U.S. 1014 (1991).

Plaintiff's sentence of 25 years to life is a legal sentence for the crime of second degree murder. *See* N.Y. Penal Law §125.25 (Murder in the second degree is a class A-I felony); N.Y. Penal Law § 70 (sentence of imprisonment for class A-1 felony shall be indeterminate with minimum term of no more than 25 years and maximum term of life imprisonment). As plaintiff has not yet completed his maximum term of incarceration, and has no liberty interest in being granted parole prior to the expiration of his term of incarceration, there is no legal basis for plaintiff's claim of cruel and unusual punishment. *See Larocco*, 2006 WL 1313341, at *3.

Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires the government to treat all similarly situated individuals alike. *City of Cleburn v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). To state a selective enforcement claim under the Equal Protection Clause, a plaintiff must allege that: (1) compared with others similarly situated, the plaintiff was selectively treated;

and (2) such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith or intent to injure a person. *Siao-Pao*, 564 F. Supp.2d at 244.

Equal protection claims are "difficult if not impossible to sustain" because of the "degree of discretion accorded to the Parole Board and the wealth of factors that its members may take into account." *See Defino v. Thomas*, No. 02 CIV 7413, 2003 WL 1563253, at *7 (S.D.N.Y. Mar. 25, 2003). "Even if parole is granted to inmates with objectively similar, or even worse, criminal records than another inmate for whom parole is denied at the same time and without any stated reasons to support the different determination, that parole was denied does not support an equal protection claim, absent any allegation of intentional disparate treatment singularly targeting the plaintiff." *Harris v. Travis*, No. 04-CV-944, 2007 WL 1362634, at *3 (W.D.N.Y. May 7, 2007), *adopted by*, 2007 WL 1577765 (May 30, 2007). Thus, allegations that two white inmates were granted parole while plaintiff was not, are insufficient to support an equal protection claim. *See Siao-Pao*, 564 F. Supp.2d at 244-45; *Defino*, 2003 WL 1563253, at *7; *Brown v. Thomas*, No. 02 Civ. 9257, 2003 WL 941940, at *2 (S.D.N.Y. Mar. 10, 2003).

In the instant case, plaintiff's equal protection claim fails as a matter of law because it is clear that the individuals he attempts to compare himself to are not similarly situated and because plaintiff fails to allege selective treatment based upon impermissible factors with any plausibility. The Court of Appeals for the Second Circuit

has recognized that "there is a rational basis, *i.e.*, safety of the community, for permitting the parole board to consider the nature of the underlying offense when making parole eligibility determinations." *Harris v. Travis*, 175 F.3d 1007 (1999). The parole board proceedings attached to plaintiff's complaint state clearly their concern for public safety given that plaintiff shot a stranger to death in a bar, while the public record demonstrates that Kathy Boudin was serving a lesser sentence for felony murder and John Kim was serving a sentence of 4-12 years for first degree robbery. Plaintiff's suggestion of racial disparity is legally insufficient given plaintiff's identification of himself as "white/hispanic" as compared to Kathy Boudin's identification of herself as "white" and John Kim's identification as "other." Moreover, social and/or economic status is not a suspect class for purposes of equal protection analysis.

## **CONCLUSION**

For the foregoing reasons, defendants motion to dismiss the complaint (Dkt. #8), is **GRANTED**.

**SO ORDERED.**

**DATED:** Buffalo, New York
June 25, 2009

**S/ H. Kenneth Schroeder, Jr.**
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**